16885

SYLVAN v. SYLVAN BROS., INC. *ET AL.*
(82 S. E. (2d) 794)

*Messrs. Fulmer & Barnes,* of Columbia, *for Appellants,*

*Messrs. C. T. Graydon* and *J. Bratton Davis,* of Columbia, *for Respondent,*

432

*Messrs. Fulmer & Barnes,* of Columbia, *for Appellants, in Reply,*

June 29, 1954.

STUKES, Justice.

This appeal is from judgment affirming an award of workmen's compensation, one member of the Industrial Commission dissenting. Claimant was cofounder many years ago, and later president, of Sylvan Bros., Inc., outstanding retail jewelers of Columbia. The facts are undisputed so the question which is dispositive of the appeal is

one of law. "Upon admitted or established facts the question of whether an accident is compensable is a question of law and this is not an invasion of the fact-finding field of the Commission". *Jordan v. Dixie Chevrolet, Inc.,* 218 S. C. 73, 61 S. E. (2d) 654, 656.

Claimant, who was seventy-seven years old at the time of his accident, was, as said, the president and principal executive of the employer corporation which, with its insurance carrier, appealed from the award. He lived at a leading hotel of Columbia, The Jefferson, and was on his way from the hotel to the store, as was his custom, at a little after eight o'clock on the morning of January 24, 1948, when he slipped on the icy pavement of Main Street and fell at a point about two and a half blocks from the store; he regularly opened and closed the store each day. His hip was broken, which resulted in long hospitalization and permanent injury. Claim for compensation was promptly filed but there was no hearing upon it until nearly five years later. Award was then made for the permanent injury, for disfigurement and for medical expenses, all of which aggregated $18,372.10.

The claimant was in the habit of doing "paperwork", including the preparation of advertisements, in his hotel room, which was his home, at night, and when he fell on the street he had in his pocket papers of the business upon which he had worked in his room on the night before. However, it is not contended that he was paid an hourly wage by which it might be found that he was paid for the time consumed in walking along the street on his way to work; and the only reasonable conclusion from the evidence is that the work that he did in his hotel room, which was his home, was done there for his own convenience. Nor is it contended that the corporation paid the room rent and made claimant's hotel room its place of business. He testified, in effect, that sales and other interruptions during regular business hours at the store prevented the concentration necessary for the proper performance of the work

which he did in his room; but no reason is suggested why he could not have remained in the privacy of the store after the closing hour, when he would have been alone. The taking of the "paperwork" to his room was, therefore, for his own convenience. The store was at his disposal. It is common knowledge that business executives, professional men and "white-collar" employees generally, and sometimes others, take work home for their convenience; and it is for their convenience. The journey to and fro is not in the course of employment because the main purpose of it is to go home or to return to the place of employment, and the journey would be made irrespective of the homework.

The fact that claimant had in his pocket papers of the business upon which he had worked in his room on the night before did not convert him into an employee in the course of his employment, within the meaning of the workmen's compensation law, at the time of the unfortunate accident; he was simply on his way to work and not on an errand for his employer, either to transport the papers or otherwise; it is an inescapable inference from the record that he would have attempted to go to the store that morning as he always did, papers or no papers. Nor did the accident arise out of the employment. The ice on the street was a danger common to the neighborhood, to which all pedestrians were exposed, and it had no relation to claimant's employment. Manifestly, there was no causal connection between the employment and the injury.

The judgment will have to be reversed upon the authority of *Gallman v. Springs Mills,* 201 S. C. 257, 22 S. E. (2d) 715; *Dicks v. Brooklyn Cooperage Co.,* 208 S. C. 139, 37 S. E. (2d) 286; *Hinton v. North Georgia Warehouse Corp.,* 211 S. C. 370, 45 S. E. (2d) 591, from which the writer hereof dissented but of course is bound by the decision; *McDonald v. E. I. DuPont De Nemours & Co.,* 223 S. C. 217, 74 S. E. (2d) 918; and *Troutman v. Williams Furniture Co.,* 224 S. C. 353, 79 S. E. (2d) 374.

The *Gallman case, supra* [201 S. C. 257, 22 S. E. (2d) 716], is especially in point and, therefore, controlling; the injured employee there was en route to work, carrying his tools, when he slipped and fell on the *employer-owned* icy street. The latter, emphasized fact made it a stronger case for compensation (which was denied) than this. The remarkable similarity of the facts in that case and this is shown by the following excerpt from the opinion: "Upon the sounding of the 5:45 A.M. siren, the respondent, dressed in his work clothes and carrying the tools needed and used by him as a weaver in the mill, left his dwelling and proceeded to walk upon and along one of the streets provided by Springs Mills towards the cotton mill, his place of employment. After he had traveled approximately three-fourths of the distance between his residence and the cotton mill and was within a short distance thereof, he slipped and fell at a slick place on the ice on the sidewalk portion of the street and sustained injuries, including a badly broken arm, necessitating loss of time from work, medical treatment and other expenses." The court concluded as follows, the present applicability of which cannot be soundly avoided: "However much we might sympathize with the respondent, and regardless of what we may think the law should be in a case of the present character, it is not within our power to translate this sympathy and conviction into law. That is a strictly legislative function."

A strongly reasoned decision which is in line with our cases, cited *supra,* is *Industrial Commission of Ohio v. Gintert,* 128 Ohio St. 129, 190 N. E. 400, 92 A. L. R. 1032. It involved the compensation claim of a teacher who was killed in an automobile accident when on her way to work. In accord with established custom, she had taken home work to be done in connection with her duties as a teacher; and she had with her at the time of the accident certain papers of her pupils, just as the instant claimant had in his pocket papers relating to his employment, upon which he had worked at home on the night before. The

Ohio court denied compensation, expressly overruling its prior conflicting decision, upon the ground that there was no causal connection between the accident and the employment.

Appellants and respondent here cite Volume 1 of Larson's Workmen's Compensation Law, respondent the following from Sec. 18.34, page 259: "A trip to or from the claimant's home is in the course of employment if, combined with the personal purpose of going home, there is a business purpose which would have led to the taking of the trip in the absence of the personal purpose; or if the home has become a regular *situs* of employment; or if the injury occurs while the business activity is actually being carried on, regardless of its relative importance." But the facts of this case do not fit that text. Rather, they come within the following from Sec. 18.31, page 253: "It would be rash to announce a sweeping rule that whenever the employee performs any service at home, the intervening journey is in the course of employment. The teacher who does a little preparation at home, the lawyer who takes home a brief to read at his convenience, the newspaperman who polishes up a bit of writing at home, all might insist on compensation coverage of all their movements to and around the house by virtue of some morsel of work carried about in their pockets." It may be added that a member of this court who takes a brief home with him to read is not in the course of his employment when on the way to or from his office, although the brief may be in his pocket or in his hands when he is injured by accident. The whole of Sec. 18 of Larson is interesting and enlightening upon the subject. His conclusions are summarized at the beginning of it in the following headnote, at page 240:

"Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey. This principle applies to out-of-town trips, to trips to and from

work, and to miscellaneous errands such as visits to bars or restaurants motivated in part by an intention to transact business there."

There may also be appropriately quoted the following criticism of *Lang v. Board of Education*, 70 S. D. 343, 17 N. W. (2d) 695, at pages 255, 256:

"A decision of this kind gives one the distinct impression of clutching at straws to save an award. Is compensation law prepared to follow up the implications of a decision that professional employees (who all in some degree share the characteristic of doing part of their work at home) may convert vitually their entire day into the 'course of employment' by virtue of such trivia as opening the front door to see whether to suspend school on stormy days? Teachers, doctors, lawyers, architects, artists, executives,—almost any employee whose work is not strictly physical—have frequent occasion to perform services of some kind at home, often far more substantial than that of looking over the weather. If the going and coming rule is about to be subjected to a process of gradual erosion, through the device of finding some tidbit of work performed at home, then in fairness to employees generally the entire doctrine should be scrapped and a fresh start should be made in which all goings and comings are covered. Decisions such as the Lang award may seen commendable in giving relief to the particular victim, but, in a larger sense, they are discriminatory, since they result in virtually abandoning the going and coming restrictions for professional and semi-professional employments, largely on a fictitious basis, with little opportunity for carrying the same generous rule over into the realm of physical labor."

The wisdom of this conclusion of Professor Larson is well illustrated by the comparison of our case of *Gallman, supra,* who was a laborer, and that of the instant claimant, an executive. The allowance of the present claim would result in the discrimination of which the author warns.

In view of the noncompensability of respondent's accident for the reasons which have been stated, it is unnecessary to consider the other contention of the appellants which is that respondent was an executive rather than an employee and, therefore, not within the benefits provided for employees under the terms of the compensation law. No opinion thereabout is intimated.

The judgment is reversed and the award of the Industrial Commission is set aside.

OXNER, J., and JOSEPH R. MOSS, A. A. J., concur.

TAYLOR, J., dissents.

BAKER, C. J., did not participate.

TAYLOR, Justice (dissenting).

I am of the opinion that the award and Order appealed from should be affirmed.

On January 24, 1948, at approximately 8 o'clock in the morning, Mr. Johannes B. Sylvan, President and employee of Sylvan Bros., Inc., while on his way to open the jewelry store of Sylvan Bros., Inc., in the 1500 Block of Main Street, Columbia, South Carolina, was injured as a result of slipping on an icy spot on the sidewalk. At the time of injury, Claimant was paid a regular, fixed salary by the corporation and was carrying on his person a manufacturer's statement and correspondence relating to the business of the firm. Such correspondence was written in long hand at the hotel, then carried to the principal place of business where it was typed. Claim for benefits under the Workmen's Compensation Act was filed and the Hearing Commissioner handed down an award in favor of Claimant. Application for Review was made to the Full Commission which by a majority of 4-1 affirmed the award of the Hearing Commissioner. Appeal was duly made to the Circuit Court which after a hearing affirmed the findings and award of the Full Commission; hence this appeal.

Claimant and his brother came to this country as immigrants from Sweden and established the employer's business more than fifty years ago, exercising the diligence and thrift for which too few of us are known today. Their business grew until at present their reputation is of the highest among jewelers in this part of the country. By its very nature, this business has been one of personal service to a clientele that has come to rely to a very great extent upon the judgment of the Claimant. The testimony reveals and it is understandable that his personal services were in demand at the store to such an extent that it was impossible for him to transact other business necessary to the orderly operation of the firm such as designing of jewelry, handling the correspondence, preparing newspaper advertising and other office work. This portion of the corporation's work was transacted at the Hotel Jefferson where he lived alone and a portion of his room used as an office.

The testimony further reveals that the fiscal year of the employer, Sylvan Bros., Inc., ends each year with the month of January and that during this month, he was, among other things, working on the financial affairs of the corporation at the hotel, and was engaged in such duties on the date in question and was proceeding from the Jefferson Hotel to open the main place of business which was a part of his duties when he slipped and fell on an ice covered sidewalk, breaking his left hip. As a result of said injury, he was carried to the Columbia Hospital where his medical, surgical, hospital and like bills amounted to the sum of $14,622.10; and he now suffers some 35 to 40 per cent specific loss of the use of the left leg as result of the injury.

The present president of the employer corporation, testified that it was and is necessary, because of the nature of the business, that Claimant perform services of the corporation after closing the place of business such as designing jewelry, working on the books, etc., and that these services had been performed for some time prior to the injury, were at the time of the injury and are now being performed by

Respondent in his room at the Jefferson Hotel; that these services were expected of him as part of his employment and were necessary for the proper operation of the business; and that *such were taken into consideration in arriving at the amount of Claimant's salary.*

He further testified that a majority of the persons transacting business with the company desired to deal directly with Claimant which precluded his performing other services during business hours and further that the firm had no facilities available at the store where this work could be done; that it was therefore necessary that *such work be done at some place other than the principal place of business,* as a result of which it was being done at the Jefferson Hotel as a matter of convenience.

The bookkeeper for the employer corporation testified in addition to substantially the same as the foregoing that all correspondence relative to the operation of the business was handled by Claimant at the hotel and that at the time of injury he was engaged in preparing the financial report of the employer for the fiscal year and had with him at the time of injury a portion of this work.

Appellants offered no testimony to contradict the foregoing but took the position that such facts, if true, are not sufficient to be compensable within the purview of the Workmen's Compensation Act.

An injury to be compensable must arise out of and in the course of the employment and a finding to that effect must be based upon some competent evidence, *Elrod v. Union Bleachery,* 204 S. C. 481, 30 S. E. (2d) 73; *Gory v. Monarch Mills,* 208 S. C. 86, 37 S. E. (2d) 291; *Eargle v. South Carolina Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240; *Buggs v. U. S. Rubber Co., Winnsboro Mills,* 201 S. C. 281, 22 S. E. (2d) 881. However, whether a particular injury is compensable as arising out of or in the course of one's employment must be determined upon the particular facts of each case, *Lanford v. Clinton Cotton Mills,* 204 S.

C. 423, 30 S. E. (2d) 36; *Gallman v. Springs Mills,* 201 S. C. 257, 22 S. E. (2d) 715; and it is upon the *Gallman case* that Appellants rely to a great extent to sustain their position. In deciding that case, however, this Court stated:

"As a general rule, an employee going to or coming from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment, and therefore an injury suffered by accident at such time does not arise out of and in the course of his employment. There are two universally recognized exceptions to this rule, and a third which is recognized by the courts of some states. These exceptions are: (1) Where in going to and returning from work, the means of transportation is provided by the employer, or the time thus consumed is paid for or included in the wages. (2) Where the employee, on his way to or from his work, is still charged with some duty or task in connection with his employment. (3) Where the way used is the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed and maintained by the employer." See, also, *McDonald v. E. I. DuPont De Nemours & Co.,* 223 S. C. 217, 74 S. E. (2d) 918.

To like effect are the decisions of this Court in *Dicks v. Brooklyn Cooperage Co.,* 208 S. C. 139, 37 S. E. (2d) 286; *Hinton v. North Georgia Warehouse Corporation,* 211 S. C. 370, 45 S. E. (2d) 591; *Troutman v. Williams Furniture Co.,* 224 S. C. 353, 79 S. E. (2d) 374, and of interest is *Mims v. Nehi Bottling Co.,* 218 S. C. 513, 63 S. E. (2d) 305. However, the facts here are not entirely in accord with those of any of the aforementioned cases. In the instant case, there is testimony that the employer's business was transacted at the main place of business on Main Street and *some other location convenient to Claimant;* that he chose to do this at the Jefferson Hotel and that such was within the scope of the employment; further, that the time consumed in the performance of these duties, including the time of injury, was taken into consideration and was included in the

wages of Claimant. There is also testimony to the effect that at the time of the injury he was engaged in performing a task which was part of the employment. The Claimant in the *Gallman case* had on his person the tools of his trade but had no duty to perform until he reached his employer's premises which is a quite different situation from the one here.

A portion of the testimony appears as follows:

"Q. State whether or not it was necessary for you, as an employee, to work on those documents? A. It was, absolutely.

"Q. State whether or not you were traveling from the place where you had worked on those documents and were transporting them to another place where they would be worked on? A. That is right.

"Q. State whose business you were on when this happened? A. Sylvan Brothers.

"Q. That is your employer? A. Yes.

"Q. State whether or not the work you had done at the place of business at the hotel and carrying the documents and records you had in your possession and the opening of the store was done in the course of your employment? A. Yes, it was."

The Workmen's Compensation Act of course does not and is not intended to afford protection and coverage of general accident or life insurance policies. In Larson on Workmen's Compensation Law, Section 18.31, Vol. 1, page 253, it is stated:

"It would be rash to announce a sweeping rule that whenever the employee performs any service at home, the intervening journey is in the course of the employment. The teacher who does a little preparation at home, the lawyer who takes home a brief to read at his convenience, the newspaperman who polishes up a bit of writing at home, all might insist on compensation by virtue of some morsel of work carried about in their pockets."

And the same authority, Section 18.33, Vol. 1, Page 258, states:

"Whenever it could honestly be said that the taking of work home was solely for the employee's personal convenience compensation for injuries during the regular trip to or from work which the claimant would have taken in any case has been denied."

But where the home has become a situs of employment as in the instant case the injury is compensable as set forth by the same author on Page 259, Sec. 18.34, which states:

"A trip to or from the claimant's home is· in the course of employment if, combined with the personal purpose of going home, there is a business purpose which would have led to the taking of the trip in the absence of the personal purpose; or if the home has become a regular situs of employment; or if the injury occurs while the business activity is actually being carried on, regardless of its relative importance."

The facts in the instant case are unquestioned and unusual to such extent that I am of the opinion that the case does not fall within the general rule heretofore stated that an employee going to or coming from the place where the work is to be performed is not engaged in performing any service growing out of and incidental to his employment and that an accidental injury suffered at such time does not arise out of and in the course of his employment but rather, that it falls within two of the exceptions to this rule as set forth in *Gallman v. Springs Mills, supra:* (1) That the time when Claimant suffered the injury was included in his wages and (2) that at the time of injury he was charged with a duty or task in connection with the employment, together with the fact that the place of residence had become a situs of the employment.

Of like effect is the following statement from Harrovitz on Workmen's Compensation, Page 162:

"Off-premise injuries to or from work, in both liberal and narrow states, are compensable (1) if the employee is on the way to or from work in a vehicle owned or supplied by the employer, whether in a public (*e. g.,* the employer's street car) or private conveyance; (2) if the employee is subject to call at all hours or at the moment of injury; (3) if the employee is traveling for the employer, traveling workers; (4) if the employer pays for the employee's time from the moment he leaves his home to his return home; (5) if the employee is on the way home to do further work at home, even though on a fixed salary; (6) where the employee is required to bring his automobile to his place of business for use there. Other exceptions undoubtedly are equally justified, dependent on their own peculiar circumstances.

"It is reasonable to rule that a worker who is subject to call twenty-four hours a day is in the course of the employment at all times. To make an award only when he is actively working gives him no greater right than the ordinary set-hour worker whose remainder of the day is his own. Nearly all states, therefore, recognize the principle of twenty-four hour protection for the man subject to call— the man who may be pulled out of bed or away from his home or family at any hour. An injury to such a worker, at all times, is in the course of his employment, although an award may be defeated on other grounds, *e. g.,* that it did not arise out of the employment."

See, also, Harrovitz on Current Trends in Workmen's Compensation, Pages 679-680-681-682 and under Work Injuries at Home, Page 771 the same author states:

"Usually a worker, arriving home after his workday has ended, is no longer in the course of his employment, when not subject to call. But even at home, if performing a duty for his employer, he may still be in the course of the employment. Thus a janitor-plumber repairing a blow torch at home, and an investigator about to typewrite a report at

home were held still to be 'in the course of' their employment."

In the case of *Olson Drilling Co. v. Industrial Commission*, 386 Ill. 402, 54 N. E. (2d) 452, 457, an employee was en route to the office with reports, even though same was route home when he suffered injury. Such injury was held to be compensable, the Court saying: "If the work of the employee creates the necessity for travel he is in the course of his employment." And in *Locke v. Steel County,* 223 Minn. 464, 27 N. W. (2d) 285, 288, the Supreme Court of Minnesota held where one had just finished a noon meal at home and was on her way to pick up the daily mail when injured by falling on an icy street that "This duty required her presence on the street for her employer's purpose".

In *Joe Ready's Shell Station & Cafe v. Ready,* 65 So. (2d) 268, 270, the Supreme Court of Mississippi in its opinion by an equally divided Court affirmed an award for injuries where Claimant was an employee of a filling station and cafe. For the past five years she had worked in the station and cafe during the daytime and, with the knowledge of her employer and his insurer, performed her bookkeeping duties at home in her living room. She regularly sat on a couch and worked on a table. One evening her husband, or one of his friends, left his Browning shotgun on the couch. The Claimant moved it to sit down for her work. When she did, the gun went off and she was injured. If the accident had happened at the cafe, the Court said: "It would not be questioned that her injury would be compensable. In our opinion no different result should be reached under the facts of this case merely because the injury occurred in appellee's home." The dissenting Opinion contended that Claimant was removing the gun as part of her household duties and rejected the idea that "according to the undisputed testimony, she had to move the gun in order to sit down on the couch where she was to perform her book work."

In *Tiernan v. Potter,* 1953, 281 App. Div. 787, 118 N. Y. S. (2d) 431, a nurse-secretary was injured while on her way home carrying stenographic notes for transcription and such injury was held compensable as it was shown that the custom was to do such work as typing reports, telephoning patients, etc., at home. And in *Cahill's case,* 295 Mass. 538, 4 N. E. (2d) 332, it was held that an injury received while going home to do further work was compensable, a fortiori, an injury received going from home to the principal place of business to do further ·work which had been commenced at home, is compensable.

In *Lang v. Board of Education,* 1945, 70 S. D. 343, 17 N. W. (2d) 695, an injury was held to be · compensable where an employee received such injury while en route to his office to continue some work which he had previously started while at home.

Generally if the employee is acting within the scope of his employment, at the time of injury, such injury is compensable regardless of whether or not the danger is common to the neighborhood. See the recent case of *Lomax v. City of Greenville, S. C.,* 82 S. E. (2d) 191.

When the instant case is considered in the light that the basic purpose of the Workmen's Compensation Act is the inclusion of employees and employers and not their exclusion together with the well established policy that this Court is committed to a liberal construction toward employees, *Layton v. Hammond-Brown-Jennings Co.,* 190 S. C. 425, 3 S. E. (2d) 492; *Wallace v. Campbell Limestone Co.,* 198 S. C. 196, 17 S. E. (2d) 309, I am of the opinion that the award ·and Order appealed from should be affirmed and must therefore dissent from the majority Opinion for the following reasons: (a) It was necessary that this work be done by Claimant at some place other than the principal place of business and the fact that it was done at claimant's room was a matter of convenience and economy to him and his employer. (b) At the time of injury he was on his way

from one place of business to the other within the purview of the Workmen's Compensation Act and performing a task in connection with the employment. (c) The place of residence had become a situs of the employment.